**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000266
28-MAR-2014
10:07 AM**

NO. CAAP-12-0000266

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MARK C. KELLBERG, Plaintiff-Appellant,
v.
CHRISTOPHER J. YUEN in his capacity as
Planning Director, County of Hawai'i,
and COUNTY OF HAWAI'I, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-0157)

MEMORANDUM OPINION
(By: Foley, Presiding J., Leonard and Reifurth, JJ.)

Plaintiff-Appellant Mark C. Kellberg (**Kellberg**) appeals from the February 28, 2012 Final Judgment and various orders entered in the Circuit Court of the Third Circuit[1] (**circuit court**) which inter alia granted summary judgment on all counts in favor of Defendants-Appellees Christopher J. Yuen (**Planning Director**) and the County of Hawai'i (together, **County**).

This case arises from Kellberg's challenge of the subdivision of a 49-acre parcel of land located in Ninole, County of Hawai'i (**Subject Property**). On July 19, 2013, we remanded the case to the circuit court to dismiss for lack of subject matter jurisdiction, reasoning Kellberg had received an appealable decision in the form of the Planning Director's October 23, 2006 letter, failed to appeal to the Board within the 30 day time limit, and thus failed to exhaust his administrative remedies.

_____

[1] The Honorable Glenn S. Hara presided until December 17, 2010. The Honorable Ronald Ibarra presided thereafter.

Kellberg v. Yuen, No. CAAP-12-0000266 (Haw. App. June 20, 2013) (mem.), 129 Hawai'i 451, 303 P.3d 1228.

On January 22, 2014, the Hawai'i Supreme Court held (1) the October 23, 2006 letter was not an appealable decision and (2) Kellberg received no notice of the subdivision approval so his failure to exhaust administrative remedies was excused. (**Kellberg Decision**). See Kellberg v. Yuen, SCWC-12-0000266, 2014 WL 235461 (Haw. Jan. 22, 2014). The Kellberg Decision vacated the July 19, 2013 Judgment on Appeal and remanded the case to this court to consider the remaining issues. See id.

On remand, we consider whether the circuit court properly granted summary judgment on all counts in favor of the County. The issues relating to the jurisdiction of the circuit court before and after remand are resolved by the Kellberg Decision and are moot.

## I.   BACKGROUND

The following is taken from the Kellberg Decision:[2]

### A. Subject Property

Kellberg owns property adjacent to the Subject Property. On May 22, 2000, Virginia Goldstein, the Planning Director at the time, sent a letter to Robert Williams, President of Prudential Orchid Isle Properties, reflecting the Planning Department's determination that the Subject Property consisted of six pre-existing lots. A map was attached to Goldstein's letter, reflecting five adjoining lots in the larger 48.47-acre portion of the Subject Property, and a sixth smaller, 0.600-acre non-contiguous lot (identified as Lot 4 on the map). [(Emphasis added.)]

In December 2003, the then-owners of the Subject Property wrote to Christopher Yuen, who had taken over as Planning Director, stating that they would like to consolidate and re-subdivide the property. The owners wrote that it was their belief that there were at least "seven usable lots of record located" on the property. (Emphasis added). On June 2, 2004, the Planning Director responded to the owners and wrote that based on a review of the relevant records, the Planning Department had determined that "the subject property consist[s] of two (2) separate legal lots of record[.]" (Emphasis added). One of the lots included the small non-contiguous plot.

In 2004, Michael Pruglo purchased the Subject Property. In a letter dated January 15, 2005, Sidney M. Fuke, a planning consultant working with Pruglo, wrote to the Planning Director to memorialize a January 12, 2005 discussion between Fuke and the [Planning] Director. Fuke wrote that at the January 12 meeting, the [Planning] Director confirmed that he "would accept the six (6) lots

---

[2]     Footnotes omitted.

acknowledged in the May 22, 2000 letter as lots of record[.]"

On April 7, 2005, Fuke filed a "Consolidation/ Resubdivision Application" (SUB 05-000064) with the Planning Department, on Pruglo's behalf. In the accompanying letter, Fuke reiterated that pursuant to Goldstein's May 22, 2000 letter and Fuke's January 15, 2005 discussion with the current Planning Director, the Subject Property was determined to have six pre-existing lots.

The preliminary plat map included with the application, dated April 6, 2005, identifies the larger 48-acre portion of the Subject Property as "Parcel 1," and divides Parcel 1 into six lots, labeled "1-A" through "1-F." However, the smaller, 0.6-acre non-contiguous lot from the Planning Department's May 22, 2000 letter is not included as part of the proposed subdivision. Instead, the non-contiguous lot is labeled "Parcel 2."

On June 1, 2005, the Planning Director granted tentative approval of the preliminary plat map.

On July 1, 2005, Fuke submitted a final plat map to the Planning Director. Consistent with the preliminary map, the final plat map identifies the larger portion of the Subject Property as "Parcel 1" and shows this portion divided into six lots. The smaller non-contiguous portion of the property, while reflected in the map, is no longer identified as "Parcel 2" or by any label.

On July 11, 2005, the Planning Director sent a letter to Fuke, providing, "FINAL SUBDIVISION APPROVAL NO. SUB-05-000064." The letter stated, "Please be informed that final subdivision approval for recordation is hereby granted to the final plat map as attached herewith inasmuch as all requirements of the Subdivision Code, Chapter 23, as modified have been met." (Emphasis added).

According to Kellberg, he first became aware of the subdivision of the Subject Property a month later on August 11, 2005, when he observed a "for sale" sign on the Subject Property, and a realtor later called him with an offer to sell him a newly created lot along his property line. The next day, he went to the Planning Department. He asked an employee about filing an appeal and was informed that the thirty-day period for appeals had already passed. He asked to speak to the Planning Director, but was told that he was unavailable. Kellberg then left his contact information and asked that the [Planning] Director call him later that day. When the [Planning] Director did not contact him as requested, Kellberg again visited the Planning Department on August 16 and left his contact information. However, the [Planning] Director did not call him.

In a letter dated August 16, 2005, Kellberg informed the Planning Director that he had recently learned of the subdivision approval and that he was "writing to make [the Planning Director] aware of serious omissions and errors" in the approved subdivision plan. In relevant part, Kellberg noted that the final subdivision plan on file with the Planning Department divides the Subject Property into seven lots rather than six lots. The seventh lot consisted of the smaller, non-contiguous parcel reflected in the Planning Department's May 22, 2000 map as Lot 4. Kellberg wrote, "Your agreement to honor the previous administration's six pre-existing lot determination (as per your 01/12/05 meeting

3

with Mr. Fuke), allows a six lot subdivision of the subject property, while the 'final' subdivision plan on file with your office divides the subject property into seven lots."

Kellberg concluded his letter by stating that he "can appreciate that at this late date, the errors and omissions I have noted will be difficult to correct, and certainly inconvenient for all parties involved." He wrote, "I would encourage your prompt intervention in this matter[.]"

On October 19, 2005, the first subdivision lot was sold.

In a letter dated January 17, 2006, Kellberg again wrote to the Planning Director. He stated that in the five months since his first letter, he had called the Planning Director's office and left numerous messages, with no response. He reiterated that the most serious error in the subdivision approval was that it failed to recognize Lot 4 and created seven lots instead of the agreed-upon six lots. He concluded by requesting a response and an account of the steps the Planning Director had taken to correct the identified errors.

On February 17, 2006, Kellberg wrote to the County of Hawaiʻi Office of the Corporation Counsel (Corporation Counsel) with his concerns regarding the subdivision. Corporation Counsel responded on February 24, 2006, and encouraged Kellberg to continue attempting to contact the Planning Director and also noted that Kellberg could consider appealing the matter to the Hawaiʻi County Board of Appeals (BOA).

In a letter dated March 5, 2006, Kellberg wrote to the Planning Department, stating that he was writing "at the suggestion of Corporation [Counsel] . . . to request information concerning the [BOA]."

On March 21, 2006, the Chairman of the BOA responded to Kellberg's March 5 letter to the Planning Department. The Chairman stated that "[a]ccording to our records, the Planning Director granted Final Subdivision Approval on July 11, 2005 for the 6-lot subdivision of the subject property." (Emphasis added). The Chairman continued by informing Kellberg that the BOA rules required an appeal from the Planning Director's decision to be filed within thirty days of the decision: "For your information, Section 8-3, Time Limit for Filing Appeal, of Part 8 . . . states that an appeal from the decision of the Planning Director shall be filed within thirty (30) days after the decision." A copy of the BOA's Rules of Practice and Procedures and a General Petition form were enclosed with the letter.

On April 19, 2006, Pruglo and Fuke submitted a new consolidation and resubdivision application for the Subject Property (SUB 06-000333). The plan involved consolidating the non-contiguous parcel with another parcel created by the previous subdivision.

On June 19, 2006, Kellberg wrote a third letter to the Planning Director. According to Kellberg, he had become aware of the pending subdivision application and asked the Planning Director to notify him when the subdivision application was approved.

On August 25, 2006, Kellberg's counsel, Stephen D. Whittaker, wrote to the Planning Director at Kellberg's

request. The letter provided that it was regarding "Subdivision Plan SUB-05-000064; Resubdivision Plan 06-000333." Whittaker wrote that it was his assumption that "an appeal is premature in that Mr. Kellberg has not received notice of any action purporting to approve the 'resubdivision' . . . and on June 19, 2006, he asked, in writing, to be notified 'when tentative approval has been granted . . . for the resubdivision.'"

On October 23, 2006, more than a year after Kellberg's first letter, the Planning Director responded by letter to Kellberg and Whittaker. The [Planning] Director stated that he was writing in response to Kellberg's letters of August 16, 2005, January 17, 2006, and June 19, 2006, and to Whittaker's letter of August 25, 2006. The [Planning] Director wrote, "The number of pre-existing lots on [the Subject Property], and their subsequent use in Sub. 05-00064 and the pending Sub. 06-000333 seems to be the most important issue."

With respect to the number of pre-existing lots, the Planning Director acknowledged that the Planning Department had previously recognized six lots on the subject property, per the Department's May 22, 2000 letter. The [Planning] Director further acknowledged that in the Department's June 2, 2004 letter, the Department only recognized two lots. The Director stated, "This was a mistake, because the Department should have respected the previous determination."

The [Planning] Director explained that he subsequently informed Fuke that the Department "would honor" the May 22, 2000 recognition of six lots. Accordingly, Pruglo's subdivision application was based on recognizing six pre-existing lots. The Director also acknowledged that "there was a mistake in the approval" of the subdivision application because the Planning Department had not accounted for the non-contiguous lot:

> As Mr. Kellberg correctly points out, there was a mistake in the approval of that subdivision. One of the six recognized lots was a 0.699 acre portion of Grant 11,070. For some reason, it was not contiguous with the remainder of TMK No. 3-2-2-35. In the consolidation/resubdivision, the Planning Department did not notice that this noncontiguous portion had been included in the lot count. Thus, it remained separate, and is now TMK No. 3-2-2-110. Thus, with the six lots in Sub. 05-00064 and parcel 110, there are now seven lots instead of six.

(Emphases added). The [Planning] Director then stated that he would not be taking any action to "undo this situation at this time" because the subdivision had already "received final subdivision approval and at least some of the lots have been sold:"

> I am not going to do anything to undo this situation at this time. Sub. 05-0064 has received final subdivision approval and at least some of the lots have been sold. Given that parcel 110 is physically separated from the remainder of Sub. 05-00064, and from any property owned by the subdivider, I cannot see a way to erase its separate existence.

The [Planning] Director concluded his letter by apologizing for not responding earlier and informing Kellberg that the Planning Department staff had been "instructed to send copies of future correspondence from our office concerning Sub. 06-000333 and any revisions of Sub. 05-00064."

In a letter dated February 6, 2007, Kellberg responded to the [Planning] Director. Kellberg stated that he had reviewed the revised final plat map referenced in the [Planning] Director's January 19, 2007 letter, and the "major defect" regarding the non-contiguous lot remained. Kellberg continued, "[A]nd so I thought I would avail myself of the opportunity to ask you to reconsider your stated position that you are 'not going to do anything to undo this situation at this time.'" Kellberg cited § 23-74(c) of the [HCC], providing that the [Planning] Director's "approval for recordation of the final plat by the director shall not relieve the subdivider of the responsibility for any error in the dimensions or other discrepancies. Such errors or discrepancies shall be revised or corrected, upon request, to the satisfaction of the director." Kellberg wrote that it was his belief that this provision "would give you the legal power to require Mr. Fuke and Mr. Pruglo to correct the mistake, regardless of the cost or inconvenience to themselves."

Kellberg noted that Fuke and Pruglo still owned two pairs of abutting lots in the subdivision. Accordingly, it was within the [Planning] Director's power "to resolve the original lot count 'mistake' by simply notifying Mr. Fuke and Mr. Pruglo that they are required to combine one or the other of these abutting pairs into a single lot, thereby reducing the total number created to the requisite six."

On June 15, 2007, the Planning Director wrote a letter briefly responding to Kellberg, which did not address the concerns raised by Kellberg.

### B. Circuit Court Proceedings

1.

On May 11, 2007, Kellberg filed a Complaint inthe circuit court against the County Defendants. In Count I, Kellberg alleged that he is a "person aggrieved by the decision of [the Planning Director] to approve SUB-05-00064." He further alleged that the Planning Director had continually refused to revise the subdivision approval to comply with Chapter 23 of the County Code, despite the [Planning] Director's acknowledgment that there was a mistake in the approval of the seven-lot subdivision. The [Planning] Director had also refused to require Pruglo to comply with the law.

In Count II, Kellberg alleged that he was entitled to a declaratory judgment regarding "the application of the [HCC] to SUB-05-00064 and [the Planning Director's] arbitrary decision to disregard the limitations of Section 23-67 and to create seven (7) lots out of one in violation of Section 23-7 [(governing pre-existing lots)]."

Under Count III, Kellberg claimed that as an adjacent landowner, he has a property interest in the subdivision. He stated that the County Defendants approved the subdivision "without correcting patent defects" and without providing any notice or due process to him. He alleged that the subdivision approval therefore violated his right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution and article I, section 5 of the Hawai'i Constitution.

In Count IV, Kellberg alleged that the Planning Director abused his discretion and violated statutes by refusing to apply [HCC] § 23-67, requiring tentative approval of the preliminary plat map to be deemed void without timely submission of a final map, and § 23-74(c), requiring errors in subdivisions to be revised or corrected to the director's satisfaction.

In Count V, Kellberg alleged that he was entitled to an injunction requiring the Planning Director to bring the subdivision into compliance with the [HCC] and prohibiting the County Defendants "from permitting more than two (2) lots on the Subject Property and from allowing any subdivision of the Subject Property other than in accordance with [HCC]."

Finally, in Count VI, Kellberg claimed that his property had been adversely and materially impacted by the subdivision and by the County Defendants' refusal to correct the mistakes that had been made.

2.

On January 9, 2008, the County filed a Motion to Dismiss the Complaint (First Motion to Dismiss). The County argued that the Complaint must be dismissed because Kellberg "has not alleged any concrete interest which gives rise to standing on his part to bring this suit."

Following a hearing on the motion, the court entered an order denying the County's First Motion to Dismiss on April 1, 2008. The court found that Kellberg, "as the owner of real property adjoining SUB-05-00064, has standing to assert the claims in the Complaint."

On July 23, 2008, the County Defendants filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies (Second Motion to Dismiss). The County Defendants noted that pursuant to [HCC] § 23-5, any person aggrieved by the [Planning] Director's decision "may, within thirty days after the director's decision, appeal the decision to the board of appeals." The County Defendants argued that Kellberg was aware of the subdivision in August 2005, and "the Planning Director, in a letter dated October 23, 2006, refused to accede" to Kellberg's requests. The County Defendants argued that Kellberg had not appealed any decision of the [Planning] Director to the BOA within the required thirty-day time frame. Accordingly, the circuit court lacked subject matter jurisdiction over the case because Kellberg had failed to exhaust all available administrative remedies.

Kellberg responded that the circuit court has original jurisdiction over the Complaint, which alleged violations of the state and federal Constitution and violations of statutes. Kellberg argued that even if the court found that the Planning Department or BOA has unique expertise regarding any issues raised in the Complaint, the doctrine of primary jurisdiction required the action to be stayed rather than dismissed.

A hearing on the Second Motion to Dismiss was held on September 5, 2008. In response to the court's questions regarding notice of the subdivision to Kellberg, counsel for the County Defendants argued that the Planning Director's October 23, 2006 letter "says this was a final decision and nothing else could have occurred." Thus it was the County Defendants' position that Kellberg had until November 23, 2006 to file an appeal.

However, the court responded that the letter was "somewhat ambiguous or at least confusing" because the Chairman appeared to be saying that the final subdivision approval was on July 11,

7

2005, and Kellberg should have filed an appeal by August 11, 2005, which was well before the Chairman's letter.

On September 30, 2008, the circuit court entered its findings of fact, conclusions of law and order denying the Second Motion to Dismiss. The court found "the County has not shown that there were administrative processes available to Mr. Kellberg providing meaningful and adequate notice of SUB 05-00064 and an opportunity to appeal the Planning Director's decision."

The court concluded that it had "original jurisdiction of Plaintiff's Complaint which, under the circumstances, is not subject to dismissal for failure to exhaust administrative remedies." The court further concluded that Kellberg "did not fail to exhaust available administrative remedies and, instead, the Court finds that, under the circumstances presented on the motion, Plaintiff did not have an available administrative remedy."

On May 27, 2009, Kellberg filed a "Motion for Partial Summary Judgment on Count I (Violation of Statute), Count II (Declaratory Judgment) and Count IV (Abuse of Discretion)" (Motion for Partial Summary Judgment). Kellberg argued that there was no genuine issue of material fact that the County Defendants had violated the County Code by approving the subdivision, which "yielded seven (7) lots out of six (6)[.]" Additionally, Kellberg claimed that the Planning Director, who acknowledged the "mistake" in his subdivision approval, was required to correct the mistake.

In response, the County Defendants argued that the "determinations of pre-existing lots as well as the approval of the number of lots in a consolidation and re-subdivision are determinations within the discretion of the Planning Director."

On May 29, 2009, the County Defendants filed a "Motion to Dismiss Pursuant to Rule 12(b)(6) of the Hawaii Rules of Civil Procedure" (Third Motion to Dismiss). The County Defendants argued that no private cause of action exists to permit Kellberg to challenge the Planning Director's actions regarding the County Code.

On June 19, 2009, a hearing was held on Kellberg's Motion for Partial Summary Judgment. The court explained that it was "inclined to . . . flesh out the record at the County level" by granting Kellberg's Motion for Partial Summary Judgment "in the form of an order remanding this back down to the County. for a appeal before the Board of Appeals." The court further explained that it was finding that "Kellberg was denied an appeal before the Board of Appeals based on the October 23, 2006, decision of the director," but stopping short of finding a specific violation of the subdivision approval and "leaving that up to the Board of Appeals." The court stated that it was "sending it back to the Board of Appeals to process" Kellberg's "[a]ppeal of the October 23 decision."

On July 24, 2009, the court filed its order granting the Motion for Partial Summary Judgment. The order provided, "IT IS ORDERED ADJUDGED AND DECREED that [Kellberg] should have been allowed to appeal the decision of October 23, 2006 pursuant to the provisions of Section 23-5 of the [HCC] but [Kellberg] was denied such an opportunity to appeal." The order continued, "The Court remands this case to the Board of Appeals for the County of Hawai'i regarding the Appeal of the Decision of the [Planning] Director found in the October 23, 2006 letter to Mr. Kellberg."

On the same day, the court entered its order denying the County Defendants' Third Motion to Dismiss, reaffirming that

Plaintiff, as the owner of real property adjoining SUB-05-00064, has standing to assert the claims in the Complaint."

### C. Board of Appeals Proceedings

On September 15, 2009, Kellberg filed a "General Petition for Appeal of Decisions by Planning Director" (Petition) with the Board of Appeals. In his Petition, Kellberg stated that he sought "reversal, modification, or remand" of "three major decisions" of the Planning Director, "to whatever extent is necessary" to satisfy the [HCC]: 1) the January 12, 2005 decision to honor the May 22, 2000 determination that the Subject Property contained six pre-existing lots; 2) the July 11, 2005 decision to grant final subdivision approval; and 3) the October 23, 2006 letter stating that the [Planning] Director would do nothing to bring the subdivision into compliance.

On October 21, 2009, the County Defendants filed a motion to dismiss the Petition.

The BOA held a hearing to consider the Petition and the motion to dismiss on November 13, 2009. Counsel for the County Defendants argued that "[a]ny ruling by Judge Hara . . . cannot confer additional jurisdiction to the Board" and that Judge Hara "made no determination" that the BOA "should accept jurisdiction [.]" Counsel also argued that if the BOA took "October of 2006 as the date of the decision . . . then any appeal would have had to been filed no later than . . . November 22, 2006."

Kellberg and his counsel questioned "what decisions are included in that October 2006 letter." Kellberg's counsel further argued that whether the October letter could be characterized "as a final decision that in the ordinary course might be appealable" was not relevant to the BOA's decision on the Petition.

The BOA voted 5-1 to grant the motion to dismiss the Petition. On February 19, 2010, the BOA filed its findings of fact, conclusions of law, and decision and order (Decision and Order). The BOA found that Kellberg was appealing "from a written decision of the Planning Director dated October 23, 2006 . . . informing Appellant that the Planning Department would take no further action on a complaint by Appellant regarding consolidation and re-subdivision application SUB 05-000084." The BOA found that Kellberg "filed an appeal from the [Planning] Director's Decision on September 15, 2009."

The BOA further found that Kellberg "received notice of the requirements regarding the time for filing a notice of appeal to the [BOA] on March 5, 2006 prior to the October 23, 2006 letter from the Planning Director."

The BOA concluded that Kellberg's appeal was filed "beyond the time permitted to file an appeal," and the BOA therefore lacked jurisdiction to consider the appeal. Accordingly, the BOA determined that Kellberg's appeal was "dismissed and the decision of the Planning Director . . . affirmed."

### D. Circuit Court Proceedings Continued

#### 1.

On March 4, 2010, Kellberg filed a "Motion for Partial Summary Judgment on Count V (Injunction) and for Injunction against the County of Hawaii" (Motion for Injunction) with the circuit court. Kellberg requested an order granting summary judgment on Count V of the Complaint, seeking an injunction remanding the case to the Planning Department with instructions to

the Planning Director to bring the subdivision into compliance with the County Code, and enjoining the County Defendants from "allowing the further sale, transfer of ownership, or development and improvement of lots created" by the subdivision until compliance is demonstrated.

Kellberg argued that he had fully complied with the circuit court's July 24, 2009 order granting the Motion for Partial Summary Judgment, but was "deliberately and effectively prevented" by the County Defendants "from obtaining the relief intended by the Court." Kellberg argued that the BOA's treatment of his appeal demonstrated that Kellberg "never had, nor would have ever been allowed to have, an administrative remedy with regard to any aspect of SUB 05-00064."

The County Defendants argued in response that the BOA rendered its final decision in its Decision and Order filed on February 22, 2010, but Kellberg did not file an appeal from this Decision and Order. Thus the BOA's findings "are final and have a preclusive effect upon the issues concerning the exhaustion of administrative remedies and the jurisdiction of the circuit court with respect to this case."

A hearing on the Motion for Injunction was held on April 28, 2010. At the hearing, counsel for the County Defendants argued that "the problem" with the case was that although the circuit court "remanded" the case to the BOA, the case "never came up from the board of appeals." The court responded, "[D]idn't [the BOA] finally dismiss the appeal on the same grounds that I found that Mr. Kellberg had a basis to go ahead and have an appeal, and that is—the timing of all of these matters did not allow him to adequately lodge an appeal with the board?" The court clarified that it had remanded the case to the BOA to "see what kind of remedies they had if they were, in fact, convinced that the subdivision laws, as I was convinced, was not complied with."

The court concluded that it was "inclined to go ahead and grant the motion," but also stated that the court was "reluctant" because "the issue of whether or not there may be adequate remedies at law in terms of damages would preclude the granting of a motion for summary judgment."

Nearly five months later, on September 22, 2010, the circuit court filed an order denying the Motion for Injunction. The order provided that the court's July 24, 2009 order remanding the matter to the BOA rendered Count V of the Complaint "moot as the remand addressed Mr. Kellberg['s] right and opportunity to be heard referred to in Count V."

On October 15, 2010, the circuit court filed a second order denying the Motion for Injunction. The order was largely identical to the initial order. The second order additionally provided that Kellberg's "failure to exhaust his administrative remedies forecloses this court from further action in this matter."

2.

On April 21, 2011, the County Defendants filed a "Motion for Summary Judgment" (Motion for Summary Judgment) on all claims, asking the court to dismiss the Complaint.

In relevant part, the County Defendants argued that Kellberg had failed to exhaust his administrative remedies. Pursuant to [HCC] § 23-5, Kellberg "had thirty days to appeal the Planning Director's decision to recognize six pre-existing lots or grant final subdivision approval." "However, Plaintiff failed to file an appeal with the BOA until the Court ordered him to do so."

On May 3, 2011, Kellberg filed a memorandum in opposition to the Motion for Summary Judgment. Kellberg noted that the circuit court had already determined in its September 30, 2008 order denying the Second Motion to Dismiss, that the County had not shown there were administrative processes available to Kellberg that provided notice and an opportunity to appeal the subdivision approval. Accordingly, Kellberg argued that the Motion for Summary Judgment should be denied as an untimely motion for reconsideration.

A hearing on the Motion for Summary Judgment was held on May 11, 2011. On June 16, 2011, the court filed an order granting the Motion for Summary Judgment as to all counts. The order provided only that "the record reflects the absence of any genuine issue of material fact."

On February 28, 2012, the court filed a Final Judgment in favor of the County Defendants and against Kellberg on all counts of the Complaint.

## II.   STANDARD OF REVIEW

We review summary judgments de novo. See Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008). Under Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 56(c), the circuit court must grant a motion for summary judgment when the moving party: (1) has shown that there is no genuine issue regarding any material fact, and (2) is entitled to judgment as a matter of law. Id. "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." Id.

If the moving party meets its burden of production, the non-moving party must present admissible evidence showing specific facts about essential elements of each claim to avoid summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). We view the evidence in the light most favorable to the non-moving party; factual inferences are made in favor of the non-moving party. See Kamaka at 117 Hawaiʻi 104, 176 P.3d 103.

## III.   DISCUSSION

On July 24, 2009, the circuit court entered summary judgment in favor of Kellberg on Counts 1, 2, and 4 (**2009 Order**). On September 22, 2010 and October 15, 2010, the circuit court denied Kellberg's motion for summary judgment on Count 5. On June 16, 2011, the circuit court granted summary judgment in

favor of the County on all counts, superceding the prior orders (**2011 Order**). We review the 2011 Order de novo.

### A. The circuit court erroneously granted summary judgment in favor of the County on counts 1 and 2.

Count 1 alleges Kellberg is a person aggrieved by the decision of the Planning Director to approve SUB-05-00064. Count 1 asserts that under the Hawaiʻi County Code (**HCC**) Chapters 23 and 25 (**Subdivision and Zoning Codes, respectively**) no more than two lots could be determined to be preexisting lots on the Subject Property. Count 1 further alleges that the Planning Director failed to ensure the subdivision complied with the Subdivision Code, despite the Planning Director's acknowledgment that there was a mistake in the approval of the seven-lot subdivision.

Count 2 alleges the approval of SUB-05-00064 was void under HCC § 23-67 because the revised final plat for SUB-05-00064 was not submitted within a year of the Planning Director's tentative approval. Count 2 alleges that Kellberg was entitled to a declaratory judgment regarding the application of the Subdivision Code to SUB-05-00064 and the Planning Director's "arbitrary decision to disregard the limitations of Section 23-67 and to create seven (7) lots out of one in violation of Section 23-7 of the [Subdivision Code]."

In Hawaiʻi, it is not necessary to plead legal theories with precision. See Leslie v. Est. of Tavares, 93 Hawaiʻi 1, 4, 994 P.2d 1047, 1050 (2000). A complaint need only set forth a short and plain statement of the claim that provides the defendant with fair notice of what the plaintiff's claim is and the grounds upon which the claim rests. See Hall v. Kim, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971) (holding it is "not necessary to plead under what particular law the recovery is sought") (citation and internal quotation mark omitted). The purpose of pleading is to facilitate a proper decision on the merits. See id. The claims in Counts 1 and 2 overlap somewhat, and identify applicable and inapplicable law, but raise two questions: (1) did

the approval of SUB-05-00064 comply with the Subdivision and Zoning Codes, and (2) was the approval of SUB-05-00064 invalid?[3]

### i. The approval of SUB-05-00064 violated the Subdivision and Zoning Codes and is invalid.

Neither party disputes the material facts. The County appears to contend that since Kellberg agrees that no genuine issues of material fact exist, he cannot contest the 2011 Order's conclusion that the County was entitled to judgment as a matter of law:

> Although Kellberg disagrees with Judge Ibarra's decision, he apparently does not dispute that he failed to put forth any evidence that there were genuine issues of material fact which precluded summary judgment. In fact, Kellberg stated to the Circuit Court "there are no disputed questions of material fact[."]

This contention is contrary to HRCP Rule 56(c). See Kamaka, 117 Hawai'i at 104, 176 P.3d at 103 (summary judgment is proper under HRCP Rule 56(c) when the moving party has shown that there is no genuine issue regarding any material fact, and is entitled to judgment as a matter of law).

Subdivisions must comply with state law and county regulations. See HCC § 23-23. The "minimum sizes of various types of lots shall be in conformance with the provision of chapter 25, Zoning Code[.]" HCC § 23-33. SUB-05-00064 is located within an agricultural district, zoned A-20a. The minimum number of acres required by designation A-20a is twenty per lot. See HCC § 25-5-71. SUB-05-00064 divided 48.47 acres into six lots, creating lots less than 20 acres. However, the requirements of the Subdivision and Zoning Codes do not apply to consolidation and resubdivision actions that result in the same or fewer number of lots than existed before the action. See HCC § 23-7 and HCC § 25-2-11.[4] Consequently, the key facts in this

---

[3]     These questions were directly and indirectly addressed extensively by the parties' various circuit court motions and memoranda.

[4]     HCC § 23-7 (2005) provides:

Section 23-7. Applicability to consolidation or resubdivision action.

The requirements and standards of this chapter shall not apply to consolidation and resubdivision action

(continued...)

case are the number of lots that existed before the consolidation and resubdivision action and the number of lots that resulted.

The County's interpretation of the key facts is contrary to the undisputed record.

> What [Kellberg] conveniently ignores is that the Subject Property was seven lots, well before [Kellberg] even contemplated purchasing his property and before the county enacted the subdivision ordinance. The County simply recognized that [the Subject Property] consisted of at least six pre-existing lots based upon a prior determination in 2000.

(Italics added.)  The Subject Property consists of a 48.47 parcel and a non-contiguous .699 acre parcel.  The May 22, 2000 pre-existing lot determination, honored by the Planning Director, determined the 48.47 acre parcel had, at most, 5 pre-existing lots.  The non-contiguous parcel constituted the sixth pre-existing lot.  The preliminary and final plat maps submitted by the subdivider and approved by the Planning Director divided the 48.47 acre parcel into six lots.  Later, in his October 23, 2006 letter to Kellberg, the Planning Director confirmed there were six total lots on the subject property before the consolidation and resubdivision action, and due to his department's failure to account for the non-contiguous parcel, seven lots resulted from the action.

The County maintains the "Planning Director was very forthright and admitted a mistake had been made in counting the lots, not that the subdivision should not have been granted."

---

[4](...continued)
resulting in the creation of the same or fewer number of lots than that which existed prior to the consolidation/resubdivision action; provided that the director, upon conferring with the director of public works and manager-chief engineer of the department of water supply, may require necessary improvements to further the public welfare and safety.

HCC § 25-2-11 provides:

Section 25-2-11.  Waiver of requirements in consolidation and resubdivision actions

If the director finds the public welfare and safety will not be violated, the director may waive portions or all of the requirements and standards of this chapter for consolidation and resubdivision action resulting in creation of the same or less number of lots than that which existed [before] the consolidation or resubdivision action[.]

(Emphasis added.)   This mistake, however, is the undisputed fact that entitles Kellberg to judgment as a matter of law.  Since more lots resulted from the approved action than existed before the action, SUB-05-00064 was not exempt from the requirements of the Subdivision and Zoning Codes.  See HCC § 23-7 and HCC § 25-2-11.  And since the Subdivision and Zoning Codes apply, SUB-05-00064 violates, at a minimum, HCC § 23-33 and HCC § 25-5-71.

HCC § 23-62 provides the planning director "shall disapprove a preliminary plat or a subdivision map where the subdivider has failed to comply with the provisions of chapter 25, zoning code."  HCC § 23-62(c).  The use of "shall" makes § 23-62 mandatory and provides the Planning Director with no discretion to accept a subdivision application that, as here, fails to comply with the Zoning Code.  See Leslie v. Bd. of Appeals of Cnty. of Hawai'i, 109 Hawai'i 384, 393-94, 126 P.3d 1071, 1080-81 (2006) (use of "shall" in various Subdivision Code provisions made the provisions mandatory and left the planning director without discretion to accept a subdivision application absent strict compliance with such provisions).  Consequently, the approval of SUB-05-00064 was invalid and Kellberg is entitled to a judgment as a matter of law on Counts 1 and 2.

**B. Count 3 is moot.**

Count 3 alleged that Kellberg, as an adjacent landowner, had a property interest in the subdivision and that his right to due process under the U.S. and Hawai'i Constitutions were violated when the County approved SUB-05-00064 "without correcting patent defects" and without providing him with notice of the subdivision action or an opportunity to be heard.  Given our holding on the substantive statutory counts, Kellberg's constitutional claims are moot.

**C.   Count 4 is moot.**

Count 4 alleged that the Planning Director abused his discretion and violated statutes by refusing to apply HCC § 23-67, requiring tentative approval of the preliminary plat map to be deemed void without timely submission of a final map, and § 23-74(c), requiring errors in subdivisions to be revised or

15

corrected to the director's satisfaction. Because the Planning Director lacked discretion to approve SUB-05-00064 and the approval was invalid, as discussed above, there was no discretion to be abused. Consequently, the issue is moot.

**D.  Counts 5 and 6.**

The circuit court entered summary judgment in favor of the County on Counts 5 and 6, which essentially went to the relief sought by Kellberg because the circuit court held Kellberg did not prevail on Counts 1-4. Because we hold Kellberg should have prevailed on Counts 1 and 2, we vacate the circuit court's summary judgment in favor of the County on Counts 5 and 6.[5]

**IV.  CONCLUSION**

Accordingly, the February 28, 2012 Final Judgment is vacated and this case is remanded to the circuit court to enter summary judgment in favor of Kellberg on Counts 1 and 2, and also remanded for further proceedings consistent with this opinion, including any appropriate relief pursuant to the summary judgment to be entered on Counts 1 and 2 in favor of Kellberg.

DATED:  Honolulu, Hawai'i, March 28, 2014.

On the briefs:

Mark C. Kellberg
(on the opening brief)
Plaintiff-Appellant pro se.

Stephen D. Whittaker
(on the reply brief)
for Plaintiff-Appellant.

Michael J. Udovic
Laureen L. Martin
Deputies Corporation Counsel,
County of Hawai'i
for Defendants-Appellees.

Presiding Judge

Associate Judge

**Associate Judge**

---

[5]  Our vacating of the summary judgment in favor of the County on Counts 5 and 6 should not be construed as a ruling that Kellberg is entitled to an injunction prohibiting the County "from permitting more than two (2) lots on the Subject Property," which he is not, or any other specific form of relief. Rather, the circuit court may consider other appropriate relief on remand.